**United States District Court**
**For the Northern District of California**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALEX BARAJAS,  )<br>            )<br>       Plaintiff,  )<br>            )<br>    v.       )<br>            )<br>GREG LEWIS, Warden, Pelican Bay State  )<br>Prison, California,  )<br>            )<br>       Defendant.  )<br>            ) | Case No.: 5:10-CV-02974-LHK<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

Petitioner Alex Barajas ("Petitioner"), a state prisoner in the custody of Greg Lewis ("Respondent"), Warden of California State Prison, Pelican Bay, California, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner argues two separate grounds for habeas relief: (1) that the jury instruction on attempted murder permitted his conviction without proving beyond a reasonable doubt the required element of specific intent to kill; and (2) that his trial counsel was incompetent for failing to properly move to exclude inadmissible and prejudicial character evidence. Having considered the parties' submissions and the relevant law, the petition is DENIED for the reasons set forth below.

**I.  Factual Background[1]**

---

[1] Unless otherwise noted, the factual background is summarized from the California Court of Appeal's unpublished opinion, *People v. Barajas*, No. H031694, 2009 WL 212432 (Cal. Ct. App. January 29, 2009), Ex. B.

1

Case No.: 5:10-CV-02974-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

**A. Prosecution's Case**

At approximately 8:30 p.m. on October 25, 2005, Arthur Gomez ("Gomez") was talking to Joseph A. outside Gomez's house. *Id.* at 3. About two minutes later, a gray Buick with tinted windows drove by slowly, and parked about four houses away from Gomez's house. *Id.* at 2-3. Kristine R., who had lived across the street from Petitioner, had seen Petitioner drive by in a gray Buick approximately twenty-two minutes before. *Id.* at 2. When the gray Buick parked, Joseph A. turned away. *Id.* at 2. A man in a black hood approached Gomez and said, "[W]hat's up homie," and started shooting. *Id.* Gomez was shot in the chest and the wrist. *Id.* at 3. Joseph A. was shot in the shoulder, and the bullet lodged in his jaw. *Id.* The shooter then ran towards the Buick. *Id.* Gomez recognized the shooter as Petitioner. *Id.* at 3-4.

According to Gomez's testimony, Gomez is a member of the Varrio Norte Life, which is a Norteno gang. *Id.* at 2. Gomez knew, from previous encounters with Petitioner, that Petitioner and his brothers were members of a rival Sureno gang. *See id.* at 3. At trial, Officers Jose Rodriguez and Sergeant Anthony Mata each testified that they had encountered Petitioner on March 15, 2005, and April 16, 2000, respectively, and each testified to writing on "field identification cards" that Petitioner admitted he was a Sureno gang member to them on those occasions. *See id.* at 4. Officer Joe Campagna ("Campagna") testified as an expert witness in Hispanic street gangs during trial. *Id.* Campagna testified that Petitioner's house was searched on October 26, 2005. *Id.* at 5. Campagna stated that officers found several Sureno gang-related photos and three bullets in Petitioner's shirt. *Id.* The log on Petitioner's cell phone contained several gang monikers and the number of Sur Santos Pride, which is a Sureno criminal street gang. *Id.* Campagna opined that Petitioner was a Sureno gang member based on the field identification cards, the statements of one victim, Petitioner's juvenile record, and the evidence taken from Petitioner's room and Petitioner's phone log. *Id.*

The parties stipulated that between 1997 and 2001, Petitioner was involved in four gang-related offenses. *Id.* The parties also stipulated that Petitioner's brother, Christopher, was in custody when the shootings occurred. *Id.*

**B. Defense Case**

Petitioner testified on his own behalf. *Id.* at 6. Petitioner stated that he was 22 years old, and he decided he no longer wanted to be a Sureno when he was 17. *Id.* Petitioner's brother, Christopher, went to prison, and Petitioner did not want a similar fate. *Id.* Petitioner also testified that he was helping his brother-in-law, Manuel Mendoza ("Mendoza"), fix the cable at Petitioner's house from 5:30 p.m. to 8:00 or 8:30 p.m. on the day of the shooting. *Id.* Afterwards, Petitioner and Mendoza went to a restaurant in Mendoza's Ford Expedition and stayed there for 45 minutes. *Id.* Petitioner returned home and was asleep by 9:30 p.m. *Id.* Mendoza also testified and corroborated Petitioner's alibi. *Id.* at 8.

Petitioner testified that he drove a white Honda, and had previously owned a gray Buick, but sold it to his brother, Marcos, in early September 2005. *Id.* at 6. Petitioner denied shooting Gomez or Joseph A. *Id.* Petitioner also claimed that the gang photos found in his room belonged to his fiancée, and that he had found the bullets near his mother's house. *Id.* Petitioner's fiancée confirmed that the gang photos were hers. *Id.* at 7. Petitioner denied telling a police officer that he was a gang member on March 15, 2005. *Id.*

Petitioner also denied shooting anyone or ever discharging a firearm. *Id.* 7. Specifically, during Petitioner's testimony, defense counsel asked Petitioner:

> Q. Since you left the gang when you were 17 and a half, have you ever shot anybody.
>
> A. No, I haven't.
>
> Q. Did you ever shoot anybody?
>
> A. No, never in my life, never have discharged a firearm.

Ex. D, at 271. At sidebar, the prosecutor argued that this line of questioning "opened the door as to [Petitioner's] prior violent activities." *Id.* at 330. The Superior Court agreed, and permitted the prosecutor to ask questions about Petitioner's prior assaults to show violent character in rebuttal to Petitioner's evidence of nonviolent character. *Id.* at 331-32. However, the Superior Court

3
Case No.: 5:10-CV-02974-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

prohibited the prosecutor from providing "gory details" and "running rampant with the character evidence." *Id.*

On cross-examination, Petitioner admitted that he was involved in an attack on a student at Monroe Middle School in 1997, and that he was the stabber in a gang-related incident at Yerba Buena High School in 1999. Ex. B, at 7. Petitioner also admitted that he was involved with his brothers in a gang-related attack that involved tire irons and bottles in 2000, and that he helped stab a Norteno gang member in the chest in 2001. *Id.* Petitioner's counsel did not object to the prosecutor's questions regarding these assaults.

Vidal Santellano testified as an expert witness in Hispanic street gangs on behalf of Petitioner. *Id.* According to Santellano, petitioner successfully completed the Clean Slate Program, a gang tattoo removal program, in 2003. *Id.* The program requires an individual to disassociate himself from the gang before he can have his tattoos removed. *Id.* Santellano opined that Petitioner was no longer a gang member. *Id.*

David S. testified that he saw the shootings on October 25, 2005, and saw the shooter as the shooter was running to an old black Buick. *Id.* at 9. David S. identified the shooter as Petitioner. *Id.* At the preliminary hearing, David S. testified that he saw Petitioner's brother, Christopher, in the Buick. David S. also testified that a gold Honda dropped someone off at the scene of the shooting. *Id.*

**C.  Rebuttal**

On rebuttal, Officer Campagna testified that when he obtained the gang-related photos at Petitioner's home, Petitioner's girlfriend stated that the photos belonged to Petitioner. *Id.* Campagna also testified that when he showed Petitioner's girlfriend the bullets, she began to cry hysterically. *Id.* It was established that Petitioner made three phone calls to his brother-in-law, Manuel Mendoza, on October 25, 2005 at 3:43 p.m., 3:57 p.m., and 6:01 p.m, time during which Petitioner was allegedly helping Mendoza fix cable at Petitioner's home. *Id.* According to Campagna, Petitioner's brother, Marcos, is much heavier, a little bit shorter, and much stockier than Petitioner. *Id.*

**D. Jury Instructions**

Pursuant to Judicial Council of California Jury Instructions CALCRIM No. 600 (2006), the Superior Court instructed the jury on attempted murder in relevant part as follows:

> The defendant is charged in Counts One and Two with attempted murder.
>
> To prove that the defendant is guilty of attempted murder, the People must prove that:
>
> 1. The defendant took direct but ineffective steps toward killing another person;
>
> AND
>
> 2. The defendant intended to kill that person.
>
> * * *
>
> A person may intend to kill a specific victim or victims and at the same time intend to kill anyone in a particular zone of harm or "kill zone." In order to convict the defendant of attempted murder of Joseph [A.], the People must prove that the defendant not only intended to kill Arthur Gomez but also either intended to kill Joseph A[.], or intended to kill anyone within the kill zone. If you have a reasonable doubt whether the defendant intended to kill Joseph A[.] or intended to kill Arthur Gomez by harming everyone in the kill zone, then you must find the defendant not guilty of the attempted murder of Joseph A[.]

Ex. A, at 521.

**II.   Procedural History**

On January 18, 2007, a Santa Clara County Superior Court jury found Petitioner guilty of two counts of attempted first degree murder. Ex. A, at 499-502, 531. As to the two counts, the jury separately found true the allegations that Petitioner: (1) attempted the murders willfully, deliberately, and with premeditation; (2) personally used a firearm resulting in great bodily injury; and (3) committed the crimes for the benefit of a criminal street gang. Ex. B, at 1. Accordingly, the Superior Court imposed a sentence of 80 years to life. Ex. A, at 585-87. On January 29, 2009, the California Court of Appeal for the Sixth District affirmed the judgment. Ex. B, at 19. On April 15, 2009, the California Supreme Court summarily denied review. Ex. C.

5

Case No.: 5:10-CV-02974-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

1    On July 7, 2010, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On July 15, 2010, this Court issued an order to show cause. ECF No. 2. Respondent filed his response to the order to show cause on September 13, 2010. ECF No. 4. Petitioner filed his reply on October 13, 2010. ECF No. 7.

On February 28, 2012, this Court issued an order requesting supplemental briefing as to whether, assuming the relevant "kill-zone" instruction, CALCRIM No. 600, was unconstitutional, such constitutional error had a substantial and injurious effect or influence in determining the jury's verdict. ECF No. 10. Petitioner filed his supplemental brief on March 29, 2012. ECF No. 11. Respondent filed his supplemental opposition on April 16, 2012. ECF No. 12.

### III.  Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (West 2012). This petition was filed after April 24, 1996, and is therefore governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a federal district court may not grant a habeas petition challenging a state conviction unless the state court's ruling: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

The "contrary to" and "unreasonable application" clauses have independent meaning. *Williams,* 529 U.S. at 405. "A state court's decision is contrary to clearly established federal law if it (1) applies a rule that contradicts the governing law set forth in Supreme Court cases, or (2) confronts a set of facts materially indistinguishable from a Supreme Court decision and

6

Case No.: 5:10-CV-02974-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

nevertheless arrives at a different result." *Ramirez v. Castro,* 365 F.3d 755, 762 (9th Cir. 2004) (citing *Williams,* 529 U.S. at 405–06). That is, "mistakes in reasoning or in predicate decisions," such as "use of the wrong legal rule or framework," constitute error under the "contrary to" prong. *Frantz v. Hazey*, 533 F.3d 724, 734 (9th Cir. 2008) (en banc). Once a federal habeas court determines that a state court decision falls under the "contrary to" prong, it "must then resolve the [constitutional] claim without the deference AEDPA otherwise requires." *Id.* at 735-37 (quoting *Panetti v. Quarterman*, 127 S.Ct. 2842, 2858 (2007) (internal quotations omitted).

A state court decision involves an "unreasonable application" of clearly established precedent if it (1) "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407.

A federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application of the law must be "objectively unreasonable" to support granting the writ. *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of Petitioner's claims in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Here, that decision is the opinion of the California Court of Appeal.

Even if constitutional error is found, habeas relief is not warranted unless the violation in question "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted); *see also Fry v. Pliler*, 551 U.S. 112 (2007) (noting that AEDPA did not replace the *Brecht* test).

**IV.     Discussion**

Petitioner sets forth two separate grounds for habeas relief.  First, Petitioner argues that the jury charge on attempted murder, CALCRIM No. 600, permitted the prosecution to convict Petitioner without proving beyond a reasonable doubt the required element of specific intent to kill, thereby violating the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  Second, petitioner argues that his trial counsel was incompetent for failing to properly move to exclude inadmissible and prejudicial character evidence, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.  The Court considers each of these grounds for relief in turn.

**A.   Jury Instruction CALCRIM No. 600**

Claims that merely challenge the correctness of jury instructions under state law do not state a claim for habeas corpus relief.  *Van Pilon v. Reed*, 799 F.2d 1332, 1342 (9th Cir. 1986); *see also Estelle v. McGuirre,* 502 U.S. 62, 68 (1991).  To merit federal habeas relief when an allegedly erroneous jury instruction is given, a petitioner must show that the alleged "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009) (quotations and citations omitted).  A jury instruction violates the Due Process Clause if: (1) the instruction was ambiguous; and (2) there was "'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt."  *Id.* at 190-91 (quoting *Estelle,* 502 U.S. at 72).  "It is well established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record."  *Id.*

Additionally, to obtain habeas relief, a petitioner is required to show that the alleged instructional error resulted in "actual prejudice."  *Morales v. Woodford*, 388 F.3d 1159, 1172 (9th Cir. 2004).  That is, a petitioner must show the alleged instructional error "had substantial and injurious effect or influence in determining the jury's verdict."  *Clark v. Brown*, 450 F.3d 898, 905 (9th Cir. 2006) (citing *Brecht*, 507 U.S. at 637).  "A 'substantial and injurious effect' means a 'reasonable probability' that the jury would have arrived at a different verdict" had the alleged

instructional error not occurred. *See Byrd v. Lewis*, 566 F.3d 855, 860 (9th Cir. 2009) (quoting *Clark*, 450 F.3d at 916).

Petitioner's main argument is that the "kill-zone" instruction, CALCRIM No. 600, permitted the jury to convict Petitioner of the attempted murder of Joseph A. without finding beyond a reasonable doubt that Petitioner intended to kill Joseph A. Mem. 1. Petitioner's brief suggests three reasons why the jury could have applied the instruction in a way that violated his Due Process rights: (1) the instruction fails to instruct the jury that a kill-zone is defined not only by the location of injured victims but also by the type of force used by the defendant; (2) the instruction permits an interpretation that intent to kill "anyone" in the kill-zone is the same as intent to kill "everyone" in the kill- zone; and (3) the instruction permits an interpretation that intent to harm is equivalent to an intent to kill. Mem. 4-5.[2]

As discussed below, the Court finds that Petitioner fails to show that the alleged constitutional error regarding the "kill-zone" instruction had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Thus, the Court need not reach whether the Court of Appeal's decision affirming the Superior Court's "kill-zone" instruction was "contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3] Accordingly, the Court also need not reach whether the Superior Court's

---

[2] The Court notes that CALCRIM No. 600 has been amended to address any potential ambiguities raised in Petitioner's briefing. *See* CALCRIM No. 600 (Spring 2012); *see also People v. Ramirez*, No.G042554, 2010 WL 2297825, at *2 (Cal. Ct. App. June 9, 2010) (unpublished) (noting that "[t]he Current version of CALCRIM No. 600 remedies potential ambiguities in the prior language by replacing 'anyone' with 'everyone' and 'harming' with 'killing'").

[3] The Court notes that sister federal district courts reviewing the same or similar "kill-zone" instructions have universally held that the State court opinions upholding these instructions have been neither contrary to nor an unreasonable application of Supreme Court precedent. *See, e.g.*, *Neri v. Allison*, 10-CV-2867-RMW, 2012 WL 1067569, at *9-10 (N.D. Cal. 2012) (finding that CALCRIM No. 600 instruction did not violate due process and caused no prejudice); *Caballero v. Scribner*, 06-CV-570-VBFJC, 2009 WL 1564122, at *13 (C.D. Cal. June 2, 2009), *aff'd sub nom. Caballero v. Harrington*, 09-56252, 2012 WL 1963394 (9th Cir. June 1, 2012); *Davis v. Swarthout*, No. 09-CV-01531-JKS, 2012 WL 423618, at *7 (E.D. Cal. Feb. 8, 2012); *Ruezga v. Yates*, 06-3351-CRB, 2008 WL 282377, at * 14 (N.D. Cal. 2008), *aff'd*, 330 F. App'x 656 (9th Cir. 2009).

9

Case No.: 5:10-CV-02974-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

attempted murder instruction violated the Due Process Clause. *See Cavitt v. Cullen*, 05-CV-3064-JF, 2010 WL 3448520, at *11 (N.D. Cal. 2010) ("This Court need not determine whether the trial court erred in failing to instruct the jury if it concludes that such error was harmless under *Brecht*.").

### 1. Substantial and Injurious Effect or Influence on Jury's Verdict

As discussed above, this Court must inquire whether any alleged instructional error "had a substantial and injurious effect or influence in determining the jury's verdict" to warrant granting the writ. *Fry*, 551 U.S. at 116, 122 (quoting *Brecht*, 507 U.S. at 638).[4]

Petitioner argues that he suffered actual prejudice because the kill-zone instruction allowed the jury to convict Petitioner for attempted murder of Joseph A. without finding that Petitioner intended to kill Joseph A. Specifically, Petitioner argues that the prosecutor used the kill-zone theory in his opening statement to mislead the jury into thinking it could convict Petitioner merely by finding that Petitioner intended to kill Gomez and that Joseph A. happened to be at the wrong place at the wrong time. In other words, Petitioner argues, the kill-zone instruction allowed the jury to rely on the "discredited theory of transferred intent." Mem. 6-7. Petitioner also argues that he was prejudiced by the alleged instructional error because there was insufficient evidence to show Petitioner intended to kill Joseph A. Suppl. Br. 2. Petitioner argues that the evidence suggested that the gunman was firing at Gomez rather than targeting an area of people that included Gomez. *Id.*

Respondent contends that there is no evidence that the instructions had a substantial and injurious effect in determining the jury's verdict. Opp'n 12-13. Respondent argues that the jury's special findings of willfulness and intentional discharge of a firearm demonstrate that any error was harmless. Suppl. Opp'n 3. Moreover, Respondent argues that the evidence of Petitioner's specific

---

[4] Petitioner's reliance on *Leary v. United States*, 395 U.S. 6, 31-32 (1969), and *Griffin v. United States*, 502 U.S. 46, 59 (1991), for the proposition that "when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside" is misplaced. Mem. 6. Each of these cases went up to the United States Supreme Court on appellate review of federal law, not on federal habeas review of state law convictions, and are therefore inapplicable to this case for determining the appropriate standard of review.

10
Case No.: 5:10-CV-02974-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

intent to murder Joseph A. was "extremely compelling." *Id.* at 4. The Court has reviewed the instructions as a whole and the trial record, and finds that there is no "reasonable probability that the jury would have arrived at a different verdict" had the alleged instructional error not occurred. *Byrd*, 566 F.3d at 860 (quotation omitted).

      Petitioner has not shown, as is required for federal habeas relief, that the alleged instructional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638. First, as part of the "kill-zone" instruction, the jury was instructed that to prove that the defendant is guilty of attempted murder, the State had to prove that: "(1) the defendant took direct but ineffective steps toward killing another person; and (2) the defendant intended to kill that person." Ex. A, at 520. Second, even assuming, as Petitioner argues, that there was a "reasonable likelihood" the jury misapplied the "kill-zone" instruction, the Court separately instructed the jury as to willfulness. Specifically, the Court instructed the jury: "If you find the defendant guilty of attempted murder under Counts One and Two, you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation. The defendant acted willfully if he intended to kill when he acted." Ex. A, at 522-23; Ex. D, at 657-58. The jury separately found that petitioner "willfully, deliberately, and with premeditation attempted the murder of Joseph A." Ex. A, at 502; Ex. D, at 714. Considering the instructions and trial record as a whole, the jury's separate finding of willfulness makes it unlikely that the "kill-zone" instruction had a "substantial or injurious" influence in determining the jury's guilty verdict on the charge of attempted murder. *See Lara v. Ryan*, 455 F.3d 1080, 1086-87 (9th Cir. 2006), *rev'd on other grounds*, *Hedgpeth v. Pulido*, 555 U.S. 57 (2008) (finding no prejudice from erroneous implied malice instruction, because jury made specific finding that petitioner committed attempted murder willfully, deliberately, and with premeditation). Furthermore, it is unlikely that a jury determined that petitioner had deliberated and premeditated the attempted murder of Joseph A., but had not specifically intended to kill Joseph A. *Id.*; *People v. Barnett*, 17 Cal. 4th 1044, 1156 (1998).

11

Case No.: 5:10-CV-02974-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

Second, the evidence in the record supports the jury's finding of a separate specific intent to kill Joseph A. In determining whether error had a substantial and injurious effect on the jury's verdict, courts review all the state's evidence. *Sims v. Brown*, 425 F.3d 560, 571, *amended* 430 F.3d 1220 (9th Cir. 2005). In *Brecht*, the United States Supreme Court found the state court error harmless in part because "the State's evidence of guilt was, if not overwhelming, certainly weighty." Here there is evidence that Petitioner fired five shots from a revolver at Gomez and Joseph A. at close range. In California, the act of firing toward a victim at close range in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill. *People v. Smith*, 37 Cal. 4th 733, 741 (2005) (internal citations and quotation marks omitted).

Moreover, the evidence under the concurrent intent theory was also significant. Under California law, "a primary intent to kill a specific target does not rule out a concurrent intent to kill others." *People v. Bland*, 28 Cal.4th 313, 331 n. 6 (2002). "[T]he trier of fact may reasonably infer from the method employed . . . [that] the defendant intended to kill everyone in [the primary target's] immediate vicinity to ensure [the primary target's] death." *Id.* at 3290 Here, there is evidence that Petitioner, as a Sureno gang member, intended to kill Gomez, who was a member of a rival Norteno gang. RT 224, 236, 252-53. There is also evidence that Petitioner had previously confronted and intimidated Gomez. RT 168-69. Finally, there is evidence that Petitioner shot a revolver five times at close range, while Gomez and Joseph A. were standing in close proximity from each other. RT 130, 174.

Thus, contrary to Petitioner's assertion, there is evidence that Petitioner used sufficient force to kill everyone in the vicinity. As the Court of Appeal noted, "Given the victims' proximity to each other and to defendant, the type of force employed by defendant established a concurrent intent to kill not only Gomez, but also Joseph." Ex. B, at 29. This close range shooting is indistinguishable, if not actually worse, than a flurry of bullets at a moving vehicle containing an intended victim and another occupant or firing multiple shots into a house, which California courts have found sufficient for inferring concurrent intent to kill for purposes of attempted murder. *See*

*Bland*, 28 Cal. 4th at 330; *People v. Vang*, 87 Cal. App. 4th 554, 563-65 (2001). The record therefore contained sufficient evidence for this jury to find that Petitioner harbored a concurrent intent to kill Joseph A., i.e., intended to kill Gomez by killing everyone within the kill-zone. *See Neri*, 2012 WL 2067569, at *5, *9; *Caballero*, 2012 WL 1564122, at *8, *13. Accordingly, the Court cannot conclude that there is a reasonable probability that the jury would have acquitted Petitioner of the attempted murder of Joseph A. if the jury had received a clearer instruction with respect to the "kill-zone" theory of concurrent intent.

Based on all of the jury instructions given and the trial record, this Court cannot say that any alleged constitutional defect in the "kill-zone" instruction "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 622. Thus, any alleged error was harmless. Accordingly, Petitioner is not entitled to habeas relief on his instructional error claim.

### B. Ineffective Assistance of Counsel

Petitioner also contends that his trial counsel was incompetent for failing to properly move to exclude inadmissible bad character evidence. Mem. 7. Petitioner argues the specific past acts of violence may not be introduced to rebut an inference of good character under California Evidence Code section 1102, and that the failure of defense counsel to object to admission of this evidence permitted the jury to draw an impermissible inference of guilt. Mem. 8-9.

#### 1. Clearly Established Federal Law

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Petitioner must satisfy two elements in order to prevail on a Sixth Amendment ineffectiveness of counsel claim. First, he must establish that counsel's performance was deficient because the representation fell below an objective standard of reasonableness under professional norms. *Id.* at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance to the extent that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have

13
Case No.: 5:10-CV-02974-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* To obtain federal habeas corpus relief based on an ineffective assistance of counsel claim, a petitioner must show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam).

### 2. State Court Decision

The Court of Appeal applied the correct standard in *Strickland* to Petitioner's ineffective assistance of counsel claim. Ex. B, at 14. Specifically, the Court of Appeal determined that, even assuming trial counsel's performance fell below professional norms, trial counsel's asking defendant whether he had ever shot anyone and trial counsel's failure to object to the prosecutor's questions on cross-examination did not result in prejudice to Petitioner:

> First, the evidence was largely cumulative. The parties had already stipulated that defendant was involved in four gang-related criminal offenses between 1997 and 2001. Second, the case against defendant was extremely strong. Three witnesses saw defendant at the scene shortly before the shootings. Gomez, who saw defendant's face from a short distance, identified him as the shooter at a photo lineup and at trial. Moreover, defendant's alibi theory was rebutted by evidence that defendant called Mendoza at a time when defendant claimed they were installing cable at his house. Thus, even if the challenged evidence . . . had been excluded, it was not reasonably probable that the result of the proceeding would have been different.

Ex. B, at 14.

The Court of Appeal was not "objectively unreasonable" in its conclusion that the gang-related evidence at issue was largely cumulative and therefore not likely to change the outcome of the trial. *Yarborough*, 540 U.S. at 5. Even if this character evidence had been excluded, there was sufficient evidence for the jury to find that Petitioner committed the attempted murders by intentionally discharging a firearm. For example, three eye witnesses saw Petitioner at the scene, and one eye witness and one of the victims identified Petitioner as the shooter. Ex. D, at 73, 77, 91, 174-75, 198, 277, 568-70, 573, 575, 594, 596, 609, 619, 627, 629-31.

Moreover, even if defense counsel had objected to the prosecutor's questions relating to Petitioner's prior, violent, gang-related acts, there was other evidence that Plaintiff committed the

attempted murders for the benefit of a criminal street gang. The jury was already aware of the fact that petitioner had previously committed four gang-related criminal acts. Ex. D, at 271. Furthermore, there was other evidence, including expert testimony, that Petitioner continued to be an active Norteno gang member and that Petitioner had used his gang affiliation to threaten Gomez in prior encounters. Ex. C, at 168-171, 224, 236, 252-56, 258, 274.

Thus, it is not reasonably probable that the result of the proceeding would have been different in the absence of his counsel's alleged deficiency. *Strickland*, 466 U.S. at 697; *Ruezga v. Yates*, No. C 06-3351 CRB, 2008 U.S. Dist. 2008 WL 282377, *7-8 (N.D. Cal. January 31, 2008), *aff'd Ruezga v. Yates*, 330 F. App'x 656, 657 (9th Cir. 2009) (holding, under similar circumstances, that the Court of Appeal was not unreasonable in finding no prejudice even though trial counsel opened the door to gang-related evidence and failed to object to the prosecution using this evidence on cross-examination and rebuttal). Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

## V.     Conclusion

For the foregoing reasons, the petition is DENIED.

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated: July 30, 2012

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

15

Case No.: 5:10-CV-02974-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY